**William Lawrence PARKER,**
**Petitioner-Appellee,**

v.

**Raymond K. PROCUNIER, Director,**
**Texas Department of Corrections,**
**Respondent-Appellant.**

No. 84–2597.

United States Court of Appeals,
Fifth Circuit.

April 16, 1985.

---

**666**

Jim Mattox, Atty. Gen., Laurie A. Booras, Charles A. Palmer, Asst. Attys. Gen., Austin, Tex., for respondent-appellant.

Wm. L. Parker, pro se.

David Bryant, Jr. (court-appointed), Hughes & Hill, Dallas, Tex., for petitioner-appellee.

Before GARZA, POLITZ and DAVIS, Circuit Judges.

PER CURIAM:

The sole issue before us is whether the evidence adduced at William Lawrence Parker's Texas trial was sufficient to sustain his conviction for the murder of Virginia Moreland. Adopting the report of the Magistrate, the United States District Court for the Eastern District of Texas concluded that the evidence was insufficient and ordered that a writ of habeas corpus issue. We now reverse.

The appropriate standard for federal habeas corpus review of the sufficiency of the evidence in a state criminal proceeding is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Where, as in this case, a state appellate court thoughtfully reviews the issue of sufficiency of the evidence, that court's determination is entitled to "great weight." 443 U.S. at 310 n. 15, 99 S.Ct. at 2791 n. 15.

The evidence at trial showed that during the early morning of June 18, 1974, Moreland's nightgown-clad body was found lying near her bed in her small, four-room house in Lufkin, Texas. She had been killed by a single .32 caliber bullet through her right cheek. The bedroom had two windows, one partially blocked by a dresser and another holding a fan, neither window was broken. Officer J.B. Goodwin, after first stating that he could not remember, testified that the windows were closed when he arrived on the scene at 7:20 a.m. on June 18. Officer Goodwin also stated that blood patterns indicated that Moreland had been lying in the bed when she was shot. Officer Goodwin opined that, given the angle of the wound, Moreland could not have been shot from outside one of the windows. Moreover, Moreland's sister, who had previously lived with Moreland, testified that Moreland was "real particular" about locking the house when she went to bed and that she would not allow anyone to enter other than Parker, who lived with her most of the time, or members of her family. The evidence, while inconclusive standing alone, does tend to support the hypothesis that Moreland was shot from inside the house by either Parker or one of the house's other occupants, Moreland's four children.

The evidence at trial showed that Parker had purchased a .32 caliber weapon on June 1, 1974 and that he "always" carried it with him. The actual murder weapon was never found, however, and expert ballistics testimony could establish only that the weapon used to kill Moreland was of the same general type (that is, a .32 caliber handgun) as that which Parker had purchased on June 1. Testimony at trial further showed that during the course of Parker's six-month relationship with Moreland, he had threatened her on two previous occasions. First, about two months

---

1. Although some language in earlier Texas cases indicates that the Texas standard of review is more stringent than the federal standard, the Texas Court of Criminal Appeals has recently stated that the two standards of review are ultimately identical. *Carlsen v. State*, 654 S.W.2d 444, 449–50 (Tex.Cr.App.1983). Accordingly, as in *Holloway v. McElroy*, 632 F.2d 605, 640 n. 55 (5th Cir.1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), we have no occasion to pass on whether due process requires the application of a more stringent state standard in a federal habeas corpus proceeding.

before Moreland's death, Parker pointed a shotgun at Moreland, ordering her to run around her house three times, threatening to shoot her if she failed to comply. On another occasion, Parker had fired a shot into the ground while ordering Moreland into her house. This evidence establishes that Parker had previously backed up his commands to Moreland by the use or threatened use of firearms.

On June 17, Parker came by Moreland's house in the afternoon. He entered the house with a "long gun" and ordered her children to leave. After Parker left, Moreland was seen crying. Later that night, Parker told a neighbor he was going "home," which the record showed to be Moreland's house most of the time. The pathologist placed Moreland's time of death at around midnight. Sometime after midnight, in the very early morning of June 18, Parker entered a poolhall about two miles from Moreland's house and made a telephone call. At 2:00 a.m., the dispatcher at the Lufkin Police Department received a brief call that a woman had been shot at the address that Moreland's house shared with several other small houses. Police answered the call but found nothing. From this evidence, the jury could have concluded that Parker was at the scene of the crime and that he was aware of Moreland's death when it occurred. Moreover, many individuals who had previously seen Parker daily stated that after that morning they did not see Parker again until the time of trial. This flight evidence, when coupled with the other evidence, is some additional indication of Parker's guilt.

The most damaging testimony against Parker in the trial was that of Barbara Carr. Carr testified that she had met Parker in December of 1974 in Chicago and that he moved in with her a short time later. Parker told Carr, on three occasions, that he had killed a woman in Texas. He first said that he had left Texas because he had killed a woman there. On the second occasion, Parker said he would kill women who did not obey him, just as he had killed the woman in Texas for not minding. The third time that Parker threatened Carr with this story she called the Chicago po-lice. When the Chicago police arrived, Parker gave them a false name but Carr corrected him in the presence of the police. Although Parker made repeated attempts to discredit Carr's testimony on the basis of her lifestyle, he failed to adduce any evidence that would have made it unreasonable for the jury to believe Carr's testimony. It was therefore up to the jury to decide whether Carr's testimony in the case was credible, and they chose to believe her. From that testimony, they could have concluded that Parker intentionally killed a woman in Texas for not obeying him.

Applying the *Jackson* standard to the facts of this case, we believe that the jury behaved rationally in finding Parker guilty of murder beyond a reasonable doubt. Although the evidence is circumstantial, when viewed as a whole in the light most favorable to the State, it would enable a jury to find with a moral certainty that Parker intentionally killed Virginia Moreland. The remaining issues in Parker's petition for a writ of habeas corpus shall be considered by the District Court on remand.

REVERSED and REMANDED.