**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-2204

MARKHAM DUFF-SMITH,

Petitioner-Appellant,

versus

JAMES A. COLLINS, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

(September 17, 1992)

Before POLITZ, Chief Judge, GARWOOD and JOLLY, Circuit Judges.

POLITZ, Chief Judge:

Markham Duff-Smith, a Texas prisoner sentenced to death, appeals the rejection of his application for a writ of habeas corpus. Finding no error, for the reasons assigned we affirm the district court's denial of habeas relief.

## Background[1]

On October 15, 1975, Gertrude Zabolio, Duff-Smith's adopted mother, was murdered in her home. According to the prosecution, Duff-Smith solicited Walter Waldhauser to kill her and his stepfather, Dow Zabolio. Waldhauser in turn solicited Paul MacDonald, a bail bondsman, who hired Allen Wayne Janecka. Janecka killed Gertrude Zabolio by strangulation.

Duff-Smith was a spendthrift who lived beyond his means. During the period preceding his mother's murder he had several arguments with her over requests for money. He told several persons that he wished her dead. Duff-Smith acted on this desire and determined to secure the murder of both his mother and stepfather. Dow Zabolio was included because Duff-Smith speculated that his stepfather might delay the final distribution of his mother's estate.

Detailed evidence of the crime was provided by MacDonald who testified that in the late summer of 1975 Waldhauser told MacDonald that a friend named "Duff" needed an estate cleared up in order to accelerate receipt of his inheritance. When MacDonald stated that he was not willing to commit murder Waldhauser asked him to use his bail bond connections to find someone willing to do so.

---

[1] We present only the facts necessary for an understanding of the issues raised in this appeal. A detailed review of the facts, including the pertinent corroborating evidence, may be found in the Texas Court of Criminal Appeals' opinion affirming Duff-Smith's conviction on direct appeal, **Duff-Smith v. State**, 685 S.W.2d 26 (Tex.Crim.App.), cert. denied, 474 U.S. 865 (1985).

Waldhauser later called to ask whether MacDonald had located a hit man. Janecka was present and MacDonald asked him whether he knew of anyone available for murder for hire and Janecka replied that he would take the job. MacDonald and Janecka then contracted to perform the killings for $10,000 -- $6,500 for Janecka and $3,500 for MacDonald who was to assist Janecka in planning. A small amount of this money was provided up front.

Waldhauser supplied MacDonald with details about the intended victims, including the fact that on each Wednesday night they ate dinner at a nearby cafeteria. On Wednesday October 15, 1975 Janecka and MacDonald staked out the Zabolio home. When Gertrude Zabolio left alone to go to the cafeteria Janecka entered the home to await her return. Janecka then spent several hours in the Zabolio home with Mrs. Zabolio, ostensibly waiting for her husband to return from work.[2] According to MacDonald's testimony, Janecka told him that Mrs. Zabolio resignedly accepted her imminent death and was not surprised when Janecka revealed that her son was behind the plan. Eventually Janecka strangled the victim with her pantyhose, leaving behind two purported suicide notes, as well as a "practice" panty hose tied into a loop, much like the one used in the strangulation.[3]

The next day MacDonald met Waldhauser and Duff-Smith to

---

[2]    Gertrude told Janecka that her husband was merely working late when in fact he was in Austria.

[3]    The deceased's death was, in fact, originally ruled a suicide.

3

discuss the murder. Having been told by Waldhauser to bring some proof that he had committed the murder, MacDonald brought Mrs. Zabolio's driver's license which Janecka had given him. The license was accepted by Duff-Smith without comment. During this same meeting Duff-Smith complained that only one-half of the contract had been completed. He informed MacDonald that no more money would be paid to Janecka until Dow Zabolio had also been killed.

After a few months Janecka grew impatient and threatened MacDonald. MacDonald told Waldhauser about Janecka's threats, but no money was forthcoming. Finally, Waldhauser gave MacDonald Duff-Smith's unlisted phone number so that MacDonald could "shake things up a bit." When MacDonald told Duff-Smith about Janecka's threats, Duff-Smith agreed to "get it taken care of." Shortly thereafter, Janecka received full payment from Waldhauser.

The police were eventually alerted of the murder conspiracy by Donald Wayne Chaline. Chaline worked with Duff-Smith at Prudential Insurance Company in 1975. According to Chaline, he and Duff-Smith met several months after the murder. During the chance meeting Duff-Smith told Chaline in great detail about how he had arranged for the death of his mother in order to collect proceeds from her estate.

For three years Chaline said nothing to the police because he felt implicated. In 1979 Chaline read about the deaths by gunshot of Duff-Smith's sister, Diana Wanstrath, her husband, John

4

Wanstrath, and their 14-month-old child, Kevin Wanstrath.[4] Apparently Duff-Smith had squandered his inheritance from his mother and he hired Waldhauser and Janecka to murder the Wanstrath family so he could inherit his sister's estate. Suspecting foul play by Duff-Smith, Chaline called and then eventually met with the homicide detective investigating the Wanstrath killings.

Duff-Smith was tried for the murder of his mother.[5] During his case-in-chief he first presented the perjured testimony of two witnesses.[6] The third witness defense counsel called was Jerry Sol Eickenhorst. Unfortunately for Duff-Smith, Eickenhorst destroyed the defense theory. Eickenhorst testified that Duff-Smith had suborned perjury by various inmates and had concocted a false story that Waldhauser and MacDonald had murdered Mrs. Zabolio and were attempting to place the blame on him to avoid the death penalty. In support of his testimony, Eickenhorst provided the handwritten notes made by Duff-Smith outlining the perjurious scheme.

---

[4] The medical examiner initially ruled that the Wanstrath family deaths were the result of a double murder-suicide; that Diana Wanstrath had murdered her husband and son before committing suicide.

[5] Duff-Smith was charged with but never tried for arranging the murders of the Wanstrath family. However, during both the guilt-innocence and punishment phases of his trial for the murder of Mrs. Zabolio, the Wanstrath murders were made know to the jury via the testimony of coconspirators.

[6] There was no indication that defense counsel knew of the perjurious nature of the defense theory. Several weeks before trial five inmates, all previous jail-mates of MacDonald, contacted defense counsel by letter and offered to testify in Duff-Smith's favor.

Duff-Smith conceded that the handwriting was his.

Duff-Smith was convicted of murdering Gertrude Zabolio for renumeration, namely, for half of the proceeds of her $190,000 estate. The jury returned affirmative findings to the two special issues under Article 37.071(b), V.A.C.C.P., and punishment was assessed at death. The Texas Court of Criminal Appeals affirmed the conviction and death sentence.[7]

Execution was scheduled for January 10, 1986. When Duff-Smith filed a petition for habeas relief in state court a stay was issued. Following an evidentiary hearing the trial court entered findings of fact and conclusions of law refusing all relief. The Texas Court of Criminal Appeals denied Duff-Smith's habeas application and the trial court reset the execution for October 8, 1987.

Duff-Smith filed his first federal habeas petition in September of 1987 and a stay of execution was granted. Duff-Smith raised 11 claims, including those raised in this appeal. An evidentiary hearing was conducted and the magistrate judge entered his report recommending that the writ be denied. The district court adopted the magistrate judge's recommendation, entered an order denying the writ of habeas corpus, vacated the stay of execution, and denied a certificate of probable cause.

Duff-Smith filed a notice of appeal, which under Fed.R.App.P. 21 we consider to be a request for a certificate of

---

[7]    **Duff-Smith v. State**, 685 S.W.2d 26 (Tex.Crim.App.), cert. denied, 474 U.S. 865 (1985).

probable cause, raising ten claims for relief.  He alleges that: (1) his substitute counsel was not given adequate time to prepare his habeas claims; (2) two prospective jurors were improperly removed; (3) in violation of a discovery order, the prosecution failed to reveal the existence of the handwritten script outlining the perjurious defense theory; (4) witness Eickenhorst was an undercover agent for the state who improperly solicited admissions from Duff-Smith after his right to counsel had attached; (5) Eickenhorst affirmatively deceived defense counsel; (6) the state offered Eickenhorst undisclosed benefits and inducements; (7) subpoenas of material witnesses were quashed; (8) he was denied effective assistance of counsel; (9) the evidence was insufficient to sustain a conviction of capital murder for remuneration; and (10) unadjudicated criminal conduct was introduced during the punishment phase of his trial.  We granted the CPC.

## Analysis

In considering a federal habeas corpus petition federal courts must accord a presumption of correctness to state court factual findings.[8]  We accept the district court's findings of fact unless they are clearly erroneous; issues of law are reviewed *de novo*.[9]

---

[8]  **Barnard v. Collins**, 958 F.2d 634 (5th Cir. 1992) (citing 28 U.S.C. § 2254(d)).

[9]  **Humphrey v. Lynaugh**, 861 F.2d 875 (5th Cir. 1988), <u>cert</u>. <u>denied</u>, 490 U.S. 1024 (1989).

1. Substitute counsel

The record indicates that Duff-Smith was represented at trial by attorneys Victor Blaine and Candelario Elizondo. His direct appeal, state habeas petition, and the initial aspects of the federal habeas petition were handled by attorneys Will Gray and Carolyn Garcia. During the second evidentiary hearing Gray and Garcia asked to withdraw as counsel. The magistrate judge ultimately granted a motion to substitute Douglas C. McNabb as counsel.

At the time of his appointment, McNabb was informed that although Duff-Smith's evidentiary hearing had been held, he could supplement the record as long as he did so before the magistrate judge issued his report to the district court. No particular time period was set.

Four months later McNabb realized that previous counsel had requested a transcript of the federal evidentiary hearings but that no transcript was ever produced. McNabb requested the transcript, the request was approved, and McNabb received the bulk of the transcript the last week of October 1990.

Meanwhile, the magistrate judge had finished his report which he filed on October 9, 1990. McNabb received a copy on October 17 and was given until October 30 to file objections. This objection deadline was later extended to November 30, 1990 and then to January 4, 1991.

In his objections to the magistrate judge's report, Duff-Smith requested that his substitute counsel be given additional time to

8

examine the records, investigate the facts, and amend and/or supplement the application for writ of habeas corpus. The district court impliedly rejected this request when on January 28, 1991 it adopted the magistrate judge's report, denying the writ.

Duff-Smith argues on appeal that his substitute counsel did not have sufficient time to supplement the record before the magistrate judge issued his report, thereby denying him a fair federal habeas proceeding. He asserts that his substitute counsel has found additional material not previously applied to the facts of the writ. Citing the mandate of **McCleskey v. Zant**[10] that all claims for relief be raised in a petitioner's first habeas petition, Duff-Smith also insists that his counsel should be given additional time to perform what he terms a "**McCleskey** investigation." Accordingly, Duff-Smith requests a stay of 180 days so that his substitute counsel might fully investigate his claims in this, his first federal habeas petition. Should additional claims be discovered, he requests an opportunity to amend his petition to raise them.[11]

Discovery decisions in habeas proceedings, including whether to allow an extension of time, are left entirely to the sound

_____

[10]    _____ U.S. _____, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

[11]    Cf. **Coleman v. Vasquez**, 771 F.Supp. 300 (N.D.Cal. 1991) (staying proceedings for 120 days to allow a **McCleskey** investigation).

discretion of the district court.[12]  Amendments should be liberally allowed but the decision whether to permit an amendment to a petition after responsive pleadings have been filed is within the discretion of the district court.[13]  The decision to deny leave to amend is reviewed on appeal only for abuse of that discretion.[14]

Duff-Smith was represented by competent counsel for several years before counsel withdrew.  When McNabb was appointed as Duff-Smith's substitute counsel he was given an opportunity to supplement the record at anytime before the magistrate judge issued his report to the district court.  This was a period of four and one-half months.  McNabb then had three months to respond and object to the report.  Counsel was afforded sufficient time to review the records, investigate the facts, and present them to the court.  The new information which Duff-Smith purports to have discovered is nothing more than a bald assertion that with additional time he might be able to prove psychological mistreatment and that Eickenhorst was a government witness. We are not persuaded.  Duff-Smith has failed to show that "he was prejudiced by his inability to amend his petition."[15]

---

[12]    28 U.S.C. § 2254.

[13]    Fed.R.Civ.P. 15(a); **Hernandez v. Garrison**, 916 F.2d 291 (5th Cir. 1990).

[14]    **Carter v. Procunier**, 755 F.2d 1126 (5th Cir. 1985).

[15]    **Hernandez**, 916 F.2d at 293.  The district court did not abuse its discretion.

10

## 2. Improperly removed venire members

Duff-Smith alleges that venire members Sarah Nagler and Harold Boyd were improperly excused by the trial court in violation of **Adams v. Texas**[16] and **Witherspoon v. Illinois**.[17] He contends that the *voir dire* responses given by the two prospective jurors do not indicate that they were so opposed to the death penalty as to interfere with their duties as jurors and that they should not have been excused.

During the trial, counsel did not object to the exclusion of either prospective juror as required by the Texas contemporaneous objection rule.[18] Consistent with state law, the Texas Court of Criminal Appeals expressly stated that its judgment as to this issue rested on a state procedural bar.[19] The district court correctly concluded that the procedural default doctrine forecloses federal habeas review of this claim.[20] When a state prisoner has defaulted a claim in state court under an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the default and actual

---

[16]    448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

[17]    391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

[18]    **Russell v. State**, 598 S.W.2d 238 (Tex.Crim.App.), cert. denied, 449 U.S. 1003 (1980).

[19]    **Duff-Smith**, 685 S.W.2d at 36-38.

[20]    **White v. Collins**, 959 F.2d 1319 (5th Cir. 1992).

11

prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.[21]

But for his ineffective assistance of counsel claim discussed *infra*, Duff-Smith does not allege cause for his failure to comply with the state procedural rules for preserving error. Moreover, he offers no proof tending to show that as a consequence thereof there was a fundamental miscarriage of justice in his trial.[22]

3-6. Witness Jerry Sol Eickenhorst

Duff-Smith's third, fourth, fifth, and sixth claims for relief center around the testimony of defense witness Eickenhorst. It was Eickenhorst who surprised the defense by testifying at trial that Duff-Smith's entire defense -- that he was being framed by MacDonald and Waldhauser -- was but a perjurious concoction by Duff-Smith. The state actually learned of the scheme a few weeks before trial when Eickenhorst gave the prosecution Duff-Smith's handwritten script detailing the perjurious scheme.

Duff-Smith's first contention is that the state violated the trial court's pretrial discovery and inspection order when it failed to provide the defense with a copy of Duff-Smith's handwritten script before Eickenhorst testified. He argues that the state's failure to comply with the discovery order violates due process and deprives him of effective assistance of counsel.

---

[21] **Coleman v. Thompson**, 501 U.S. _____, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

[22] **Smith v. Murray**, 477 U.S. 527, 106 S.Ct. 2661, 9l L.Ed.2d 434 (1986).

This contention is also barred under the procedural default doctrine because Duff-Smith did not object to the admission of the script at trial. As the Texas Court of Criminal Appeals noted in rejecting this claim, "[i]t is well settled that the proper procedure when alleging surprise due to violation of a trial court's order for discovery is to object or ask for a postponement or continuance of the trial."[23] Moreover, were we to reach the merits of this claim, it is apparent that no federal constitutional right is implicated. Eickenhorst's testimony and the script were fully known and available to Duff-Smith; thus, he cannot complain that it was withheld in violation of **Brady v. Maryland**.[24]

Duff-Smith's next allegation is that Eickenhorst was an undercover agent for the state who solicited admissions from him after his right to counsel had attached in violation of **Maine v. Moulton**[25] and **Massiah v. United States**.[26] He also insists that at the request of the prosecution, Eickenhorst affirmatively deceived defense counsel by informing them that his in-court testimony would support the fabricated defense theory. In addition, Duff-Smith

---

[23]     **Duff-Smith**, 685 S.W.2d at 33.

[24]     373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). <u>See</u> **Mattheson v. King**, 751 F.2d 1432 (5th Cir. 1985), <u>cert</u>. <u>denied</u>, 106 S.Ct. 1798 (1986); **United States v. Jones**, 712 F.2d 115 (5th Cir. 1983).

[25]     474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

[26]     377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

13

alleges that Eickenhorst's testimony was induced by promises of favorable treatment by the prosecutor in violation of **United States v. Bagley**.[27]

Duff-Smith offered no evidence to support any of these contentions. In the state habeas proceedings, the trial court found that Eickenhorst was never a state agent, that the prosecutors did not ask Eickenhorst to deceive defense counsel, and that no inducements were given to Eickenhorst by the state either before or after his testimony.[28] These state findings, supported by the record, are entitled to a presumption of correctness.[29] Moreover, after the federal evidentiary hearing in which Duff-Smith called several witnesses in an attempt to prove his allegations, the magistrate judge again determined that Eickenhorst was not an agent and that his actions were not induced by the state. There is simply no evidence supporting these allegations, and mere arguments to the contrary do not raise a constitutional issue.[30]

7. Compulsory process

Duff-Smith contends that his sixth amendment right to compulsory process was denied during the state collateral hearing

---

[27] 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (failure of the state to reveal favorable information such as inducements may violate due process).

[28] **Ex parte Duff-Smith**, No. 16,92601 at 81-85.

[29] 28 U.S.C. § 2254(d).

[30] **Ross v. Estelle**, 694 F.2d 1008 (5th Cir. 1983).

when the judge quashed subpoenas *duces tecum* served on three witnesses, Harris County District Attorney Johnny Holmes, Texas Attorney General Jim Mattox, and United States Marshal B.S. Baker. Duff-Smith claims he was seeking information that these individuals may have had regarding the fact that Eickenhorst was eventually transferred to the federal prison system.

This contention is without merit for infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.[31] We look only to the trial and direct appeal. Further, Duff-Smith was granted permission to call these same witnesses in the federal evidentiary hearing if he was not satisfied with the affidavits they submitted. Although Duff-Smith's defense counsel expressed some dissatisfaction with Holmes' affidavit, counsel elected not to call him.

8.  Ineffective assistance of counsel

In his eighth claim for relief Duff-Smith argues that he was denied his sixth amendment right to the effective assistance of counsel. Specifically, he contends that his counsel: (1) failed to object to the excusal for cause of prospective jurors Boyd and Nagler; (2) failed to object to prosecutorial misconduct; (3) did not present mitigating evidence during the punishment phase of trial; (4) failed to challenge the medical examiner reports; (5) did not pursue a change in venue; and (6) failed to investigate adequately the background of witness Don Chaline.

---

[31]  **Vail v. Procunier**, 747 F.2d 277 (5th Cir. 1984).

15

To succeed with an ineffective assistance of counsel claim, Duff-Smith must show that counsel's performance was deficient, falling below an objective standard of reasonableness and the deficient performance prejudiced the defense to the extent that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[32] The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct.[33] In our assessment, we "strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."[34]

As previously discussed, defense counsel did not object to the trial court's excusal for cause of venire members Boyd and Nagler, and thus Duff-Smith is precluded from directly litigating that issue on the merits. Under **Strickland**, however, Duff-Smith may still raise the merits of this issue through an ineffective assistance of counsel claim.[35]

---

[32] **Strickland v. Washington**, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); **Lincecum v. Collins**, 958 F.2d 1271 (5th Cir. 1992).

[33] **Strickland**, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; **Barnard**, 958 F.2d at 638.

[34] **Wilkerson v. Collins**, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing **Strickland**).

[35] **Kimmelman v. Morrison**, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); **Strickland**, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

16

The applicable standard to determine whether a prospective juror may be excluded for cause because of his or her views on capital punishment is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"[36] A juror's bias need not be proven with "unmistakable clarity."[37] The trial judge is in the best position to assess the demeanor and credibility of a prospective juror; accordingly, the judge's determination is statutorily accorded a presumption of correctness.[38]

A studied review of the responses of Boyd and Nagler during *voir dire* confirms that they were not excused improperly under **Adams** and **Witt**. After admitting that she philosophically opposed the death penalty, Nagler was asked if she would resolve the conflict between her conscience and oath by answering the special answers "no" to avoid the death penalty. Nagler first responded that she would and later stated that she did not know what she would do to resolve the admitted conflict. Boyd was not sure that he believed in capital punishment and for that reason he stated that he "might answer the second [question] no to keep from having to kill." When defense counsel asked Boyd "if you were in that

---

[36] **Wainwright v. Witt**, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

[37] **Id.**

[38] 28 U.S.C. § 2254(d); Ellis v. Lynaugh, 873 F.2d 830 (5th Cir.), cert. denied, 493 U.S. 970 (1989).

17

position then you would violate that oath that you would take and answer it wrongfully, contrary to the law and the evidence?" Boyd replied that he "wouldn't take the oath in the first place . . . if it meant killing somebody." The trial court could have been "left with the definite impression that [Nagler and Boyd] would be unable to faithfully and impartially apply the law."[39] Hence, Duff-Smith's counsel did not act unreasonably or unprofessionally in failing to object to the excusing of Nagler and Boyd.

Duff-Smith also alleges his counsel were ineffective in failing to object to prosecutorial misconduct -- that in violation of a discovery order the prosecution did not notify defense counsel of their advance knowledge of the perjurious defense theory and of Duff-Smith's handwritten script. This claim has no merit. Duff-Smith was not deprived of a fundamentally fair trial because the state failed to inform him that the authorities were aware that he planned and then suborned perjury. Duff-Smith obviously had full knowledge of the information the prosecution did not reveal; his constitutional rights manifestly were not implicated.[40]

We next examine Duff-Smith's allegation that his counsel was ineffective for failing to present any mitigating evidence during the punishment phase of his trial. "[F]ailure to present mitigating evidence 'if based on an informed and reasoned practical

---

[39] **Witt**, 469 U.S. at 426, 105 S.Ct. at 853, 83 L.Ed.2d at 853.

[40] **Mattheson**, 751 F.2d at 1444; **Jones**, 712 F.2d at 122.

judgment, is well within the range of practical choices not to be second-guessed.'"[41] Duff-Smith presented his counsel with the names of several potential character witnesses. Defense counsel contacted each person. Determining that these witnesses might be more damaging than helpful, counsel decided not to present their testimony during the punishment phase of trial. Such reasoned trial strategy, although it might be challenged with the benefit of 20-20 hindsight, is not defective within the meaning of **Strickland**.

Duff-Smith's remaining ineffective assistance of counsel claims are equally without merit. The decision by his counsel not to challenge the medical examiner's report on Mrs. Zabolio's cause of death was clearly trial strategy.[42] Both Waldhauser and MacDonald had admitted to the killing of Mrs. Zabolio. Likewise, counsel's decision not to pursue Duff-Smith's initial motion for a change of venue was also the product of reasoned trial strategy. After *voir dire* defense counsel was satisfied that Duff-Smith could receive a fair trial in Harris County. As there was neither a demonstration nor suggestion of prejudice, this cannot be deemed ineffective assistance of counsel.[43] And finally, Duff-Smith fails to demonstrate what relevant fact(s) a more thorough background

---

[41] **Wilkerson**, 950 F.2d at 1065 (quoting **Mattheson**, 751 F.2d at 1441).

[42] **Strickland**, 466 U.S. at 694; **Green v. Lynaugh**, 868 F.2d 176 (5th Cir.), <u>cert</u>. <u>denied</u>, 493 U.S. 831 (1989).

[43] **Gilliard v. Scroggy**, 847 F.2d 1141 (5th Cir. 1988), <u>cert</u>. <u>denied</u>, 488 U.S. 1019 (1989).

19

check on Don Chaline, the state's primary non-accomplice witness, would have revealed. Pure speculation that crucial cross-examination material might have been discovered is insufficient to raise a constitutional claim of ineffective assistance.[44]

9.   Insufficiency of evidence

Duff-Smith asserts that the state failed to present sufficient evidence to support the jury's finding of the remuneration element of capital murder. The heart of his argument is that remuneration was not shown because he would have inherited the same amount of money from his mother if she died naturally as he received after her murder. Thus, Duff-Smith argues, he did not gain from the murder.

When testing the sufficiency of the evidence in the context of a habeas petition the state conviction must stand unless no rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proven beyond a reasonable doubt.[45] When a state appellate court reviews the sufficiency of the evidence, that court's opinion must be given great weight.[46]

---

[44]   See **Barnard**, 958 F.2d at 642 n.11.

[45]   **Jackson v. Virginia**, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

[46]   **Parker v. Procunier**, 763 F.2d 665, 666 (5th Cir.), cert. denied, 474 U.S. 855 (1985).

20

Duff-Smith's argument runs afoul of **Beets v. State**[47] wherein the Texas Court of Criminal Appeals specifically approved its prior holding in his case.[48]  In **Beets** the defendant murdered her husband to collect on his insurance policy and to sell his separate property.  In reversing the initial panel ruling, the Court of Criminal Appeals sitting *en banc* held that remuneration includes murder in anticipation of receiving an estate from the murdered victim.  Questions regarding the sufficiency of the evidence are gauged in the light of applicable state law.[49]  Under Texas law the trial record contains evidence sufficient to establish beyond a reasonable doubt the essential elements of capital murder for remuneration.

10.  Use of unadjudicated criminal conduct

During the punishment phase of the trial evidence was introduced of Duff-Smith's conspiracy to murder the Wanstrath family, and his offer to murder the husband of an ex-girlfriend for inheritance purposes.  Duff-Smith alleges that this was error.  He also contends that the evidence pertaining to the Wanstrath murders was hearsay and thus violated his right of cross examination.

His first contention is squarely foreclosed by the law of this

---

[47]     767 S.W.2d 711 (Tex.Crim.App. 1985) (*en banc*).

[48]     685 S.W.2d at 33 (evidence sufficient to sustain a conviction of capital murder for remuneration).

[49]     **McGee v. Estelle**, 732 F.2d 447, 451 (5th Cir. 1984).

21

circuit.[50]  As for the second argument, the statements Duff-Smith complains of were coconspirator statements made in the course and within the scope of the conspiracy.  They were admissible.[51]

For these reasons, the decision of the district court denying the application for writ of habeas corpus is AFFIRMED.

---

[50]  **Landry v. Lynaugh**, 844 F.2d 1117 (5th Cir.), cert. denied, 488 U.S. 900 (1988) (admission at sentencing in state capital murder trial of evidence of prior unadjudicated offenses does not violate due process rights).

[51]  Fed.R.Evid. 801(d)(2)(E); **United States v. Miller**, 799 F.2d 985 (5th Cir. 1986).