**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-10812
_____

ODELL BARNES, JR.,

Petitioner-Appellant,

VERSUS

GARY JOHNSON,

Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(98-CV-007)
_____

June 15, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

   Odell Barnes, Jr., was convicted of the capital murder of Helen Bass and was sentenced to death.

He requests a certificate of appealability ("COA") to seek review of the federal district court's denial

of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Concluding that Barnes

has failed to make either a credible showing that the district court erred or a substantial showing of

the denial of a constitutional right, we deny a COA.


I.

   Bass returned home from work at approximately 11:30 p.m. on November 29, 1989. A friend

---

   *Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

became concerned when she failed to answer her door the following day, so the friend telephoned a neighbor to check on her. Bass's neighbor went to Bass's home and noticed that her back door had been forcibly kicked in; she entered the home, discovered Bass's body, and called the police.

Bass was found naked and beaten in her bedroom. She had been shot in the head, stabbed twice, hit with a .22 caliber rifle, and struck in the head with a blunt object. A bloody knife, a bloody lamp with a dent in its base, and a .22 caliber rifle that had been broken in half were discovered in Bass's home; her .32 caliber handgun was not recovered at the scene, however.

Testimony placed Barnes in Bass's yard at approximately 10:30 p.m. on November 29; he was wearing dark coveralls and a stocking cap. On November 30, Barnes gave his coworker, Johnny Humphrey, a gun to sell; the gun later was identified as belonging to Bass. Barnes's coveralls were recovered from his brother's car; they were stained with type O blood, Bass's blood type. Barnes's fingerprint appeared on the lamp found in Bass's home, and the shoe pattern on Barnes's shoes matched a shoe pattern found on the back of Bass's checkbook on the floor of her bedroom.

## II.

Barnes's conviction was affirmed on direct appeal in 1994. *See Barnes v. State*, 876 S.W.2d 316 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 861 (1994). On April 15, 1997, Barnes filed an application for state habeas relief, which was denied by the Court of Criminal Appeals. He then filed a petition for writ of habeas corpus pursuant to § 2254, raising the following grounds: (1) The trial court failed correctly to define reasonable doubt; (2) the appellate court failed to conduct a meaningful review of his death sentence; (3) Texas law did not require the trial court to define certain vague and arbitrary terms in the special issue questions that determined his sentence; (4) the trial court failed to instruct the jury that a single "no" vote to the special-issue questions would result in a life sentence; (5) his sentence was excessive and disproportionate; (6) the death penalty in Texas was applied arbitrarily and capriciously; (7) the mitigation instruction the trial court gave the jury was inadequate; (8) the search warrant was not supported by probable cause; (9) he received ineffective assistance of counsel because his attorney failed to perform an adequate investigation and failed to

raise certain issues on appeal; (10) the cumulative effect of the errors in his trial constituted a violation of his constitutional rights; and (11) his rehabilitation on death row established that he is no longer a threat to society.

Barnes's § 2254 petition was filed on December 18, 1997, through his state-court-appointed attorney, whose representation of Barnes was limited to state-court proceedings. That attorney then filed a motion for the appointment of counsel to represent Barnes with regard to his federal habeas petition. The district court granted Barnes's motion on January 21, 1998, and appointed new counsel to represent him in the federal habeas proceeding.

On March 3, 1998, Barnes's new counsel moved for continuance, arguing that additional investigation was necessary to represent Barnes adequately. Barnes also filed on that date a sealed *ex parte* motion to secure the services of a DNA laboratory to perform a polymerase chain reaction test on a biological sample from the crime scene in an attempt to exclude Barnes as the perpetrator. Barnes additionally filed a sealed *ex parte* motion for the appointment of experts in blood-spatter analysis, crime-scene investigation, and fingerprint analysis. The district court denied the motions.

On April 17, 1998, Barnes filed a motion for leave to file an amended habeas petition, stating that after additional investigation by his counsel and counsel's investigator, he wished to add additional grounds to support his claim of ineffective assistance of counsel and a claim that his execution would violate his constitutional rights because he was actually innocent of capital murder. The district court denied the motion.

On April 22, 1998, Barnes filed an amended motion for continuance, arguing that additional time was necessary to perform DNA testing. The next day, he moved to dismiss his habeas petition without prejudice, arguing that he was required to exhaust his new claim of actual innocence in the Texas state courts. The district court denied both motions.

On April 24, 1998, the district court conducted a hearing on the habeas petition, at which Barnes

reurged his motions for a continuance, to dismiss the case without prejudice, to amend his original habeas petition, and for the appointment of a DNA expert. The district court again denied the motions.

The court determined that the claims were without merit and granted the state's motion for summary judgment, denied the habeas petition, and dismissed the action with prejudice. The court declined to issue a COA.

III.

A.

Because Barnes filed his federal habeas petition in December 1997, after the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), he must obtain a COA to proceed on appeal.[*] A COA will be granted only if Barnes makes a substantial showing of the denial of a constitutional right. *Id*. § 2253(c)(2). This standard requires that the issues be debatable among jurists of reason and that the applicant make an adequate showing to proceed further. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir.), *cert. denied*, 118 S. Ct. 399 (1997).

When the underlying issue in a habeas appeal is not of constitutional dimension, the applicant first must make a credible showing that the district court erred. *See Murphy v. Johnson*, 110 F.3d 10, 11 (5th Cir. 1997) (applying COA standard to issue of exhaustion of state remedies). If this showing is made, the court then determines whether the applicant's substantive claims are "debatable among reasonable jurists." *Id.*

B.

The AEDPA prescribes the following standards of review:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

judgment of a State court shall not be granted with respect to any claim that was adjudicated

---

[*] *See Nobles v. Johnson*, 127 F.3d 409, 413-14 (5th Cir. 1997) (holding that the filing date of a habeas application determines applicability of AEDPA), *cert. denied*, 118 S. Ct. 1845 (1998); *Green v. Johnson*, 116 F.3d 1115, 1120 (5th Cir. 1997); 28 U.S.C. § 2253(c).

on the merits in State court proceedings unless the adjudication of the claimSS

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Pure questions of law are reviewed under the "contrary to" standard; mixed questions of law and fact are reviewed under the "unreasonable application" standard. *Drinkard v. Johnson*, 97 F.3d 751, 764-66 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997). Section 2254(d) applies only to issues that have been adjudicated on the merits in the state courts. *See* § 2254(d).

IV.

Barnes has not briefed several claims he raised in the district court: The trial court failed correctly to define reasonable doubt; the appellate court failed to conduct a meaningful review of his death sentence; Texas law did not require the trial court to define certain vague and arbitrary terms in the special issue questions that determined his sentence; the court failed to instruct the jury that a single "no" vote to the special issue questions would result in a life sentence; his sentence was excessive and disproportionate; the death penalty in Texas was applied arbitrarily and capriciously; the mitigation instruction the trial court gave the jury was inadequate; the search warrant was not supported by probable cause; he received ineffective assistance of counsel because his attorney failed to raise certain issues on appeal; the cumulative effect of the errors in his trial constituted a violation of his constitutional rights; and his rehabilitation on death row established that he was no longer a threat to society. Issues not raised in a brief filed in support of an application for COA are waived. *See Moawad v. Anderson*, 143 F.3d 942, 945 n.1 (5th Cir.), *cert. denied*, 119 S. Ct. 383 (1998).

V.

Barnes argues that the district court abused its discretion by denying a continuance. He contends that after new counsel were appointed, they began an investigation and obtained thousands of records

that yielded new evidence, but that continued investigation was necessary. Barnes asserts that counsel did not have sufficient time, after their appointment, to review the records adequately, investigate the case, and locate the witnesses. We review the denial of a continuance for abuse of discretion. *Willie v. Maggio*, 737 F.2d 1372, 1395 (5th Cir. 1984).

Barnes's new counsel were appointed on January 21, 1998; a hearing on the habeas petition was scheduled for April 24, 1998. Thus, counsel had three months to review records, investigate, and locate witnesses.

Further, much "additional investigation" had already been conducted before counsel were appointed. Barnes had raised the argument in his state habeas application, which was filed in April 1997, that his trial counsel had failed to investigate adequately and to develop facts material to his innocence. In his state habeas application, Barnes had presented the affidavits of several individuals who, he alleged, had not been contacted by his defense team and whose statements raised questions about the case against him.

Finally, the evidence against Barnes was strong. He argued at trial that his coworker, Humphrey, was the perpetrator, but the jury apparently rejected this argument. The state appellate court found that the "combined and cumulative force of all the incriminating circumstances leads us to conclude that there was sufficient evidence for any rational trier of fact to conclude beyond a reasonable doubt that [Barnes] was guilty of capital murder, and to exclude every other reasonable hypothesis except for that of guilty."

Barnes has not shown that the denial of continuance was an abuse of discretion. Given the strength of the evidence against him, Barnes is also unable to show that he suffered prejudice.

## VI.

Barnes avers that the district court abused its discretion by denying his requests for the assistance of experts in DNA, fingerprinting, and blood-spatter analysis and crime-scene technology. Expert services may be authorized for capital habeas petitioners proceeding with appointed counsel on a finding that such services are "reasonably necessary" for the representation of the petitioner. 21

6

U.S.C. § 848(q)(9); *Fuller*, 114 F.3d at 502. Although this court has not addressed the standard of review to be applied on review of a decision to grant or deny funding for expert services under this statute, other circuits have determined that such a decision is to be reviewed for abuse of discretion. *See Bonin v. Calderon*, 59 F.3d 815, 837 (9th Cir. 1995); *In re Lindsey*, 875 F.2d 1502, 1507 n.4 (11th Cir. 1989).

Barnes contends that the appointment of an expert in blood-spatter analysis and crime-scene investigation was reasonably necessary because the evidence showed extensive blood spatter throughout the room where the victim was discovered, but only two tiny spots of blood on Barnes's clothing, and because the crime-scene technician who processed the crime scene was later terminated by the Wichita Falls Police Department for incompetence. Barnes contends that the appointment of a fingerprint expert was reasonably necessary because there were many fingerprints present on items seized by the police that were never "lifted" or preserved. Finally, Barnes contends that the appointment of a DNA expert was reasonably necessary because the state's evidence at trial did not scientifically link him to the crime to the exclusion of other potential suspects and that additional testing was required to establish the time at which the biological sample was deposited, because he and the victim had previously had a consensual sexual relationship.

This issue is based on an invalid legal premise. Barnes asserts that he wished to raise a claim of "actual innocence," but a claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). It would be futile for the district court to grant Barnes's request for expert services, because any evidence

discovered by the investigators would not be relevant to a habeas petition. Barnes thus has not shown that the expert services were reasonably necessary for the resolution of his habeas petition.

Barnes did argue that he had received ineffective assistance of counsel because his attorney failed to perform an adequate investigation. The district court found, however, that the new evidence was "completely unreliable and invalid on its face," that none of the new information demonstrated that

7

counsel was deficient, that many strategic concerns existed why counsel would not have called the new witnesses to testify, and that there was extensive evidence of guilt. Because the requested expert assistance could not have influenced the district court to reach a different conclusion with respect to the ineffective-assistance claim, the court did not abuse its discretion in concluding that expert assistance was not necessary.

## VII.

Barnes argues that the district court abused its discretion by denying his motion to amend his habeas petition. He states that neither he nor his current counsel prepared his original federal habeas petition and that the motion to amend was filed timely, within two months of counsel's appointment, to add an allegation of "actual innocence."

Amendments to a habeas petition should be liberally allowed, but the decision whether to permit an amendment after responsive pleadings have been filed is within the discretion of the district court. *Duff-Smith v. Collins*, 973 F.2d 1175, 1180 (5th Cir. 1992). The decision to deny leave to amend is reviewed only for abuse of that discretion. *Id.*

As discussed above, a claim of actual innocence based upon newly discovered evidence is not a ground for federal habeas relief. *See Herrera*, 506 U.S. at 400. The court did not abuse its

discretion by denying leave to amend to add a claim that was not cognizable in a federal habeas petition. *See id.*

## VIII.

Barnes argues that the district court abused its discretion by denying his motion to dismiss his habeas petition without prejudice. He contends that he should have been allowed to return to the state habeas court to exhaust his state remedies with regard to his new claim of actual innocence.

Because an answer and motion for summary judgment had been filed when Barnes filed his motion, Barnes could not voluntarily dismiss his habeas petition save on order of the district court and on such terms as the court deemed proper. *See* FED. R. CIV. P. 41(a)(2). A decision under rule 41(a)(2) is

8

reviewable only for abuse of discretion. *Kramer v. Butler*, 845 F.2d 1291, 1294 (5th Cir. 1988).

Barnes stated in his motion to dismiss that he wished to raise a new habeas claim on which he had not exhausted his state remedies. When a claim fails to state a violation of a federal constitutional right, however, there is nothing to be exhausted in the state courts. *Colvin v. Estelle*, 506 F.2d 747, 748 (5th Cir. 1975). There was no abuse of discretion.

IX.

Barnes argues that he received ineffective assistance of trial counsel, reasoning that his attorney was ineffective because he failed to investigate and to develop facts material to Barnes's innocence. Barnes contends that a thorough investigation would have revealed several witnesses whose testimony could have attacked the credibility of the state's evidence and witnesses.

Barnes raised this ineffective-assistance-of-counsel claim in his state habeas application. The state court adjudicated the claim under *Strickland v. Washington*, 466 U.S. 668 (1984). An ineffective-assistance-of-counsel claim is a mixed question of law and fact. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.), *writ of habeas corpus denied*, 118 S. Ct. 274 (1997). Therefore, we must determine whether the state courts' resolution of Barnes's ineffective-assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law. *See* § 2254(d).

To obtain habeas relief based on ineffective assistance of counsel, Barnes must show that his attorneys' performance was deficient and that the deficient performance prejudiced the defense. *Washington*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct. *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (internal quotations and citation omitted).

9

To demonstrate prejudice, a petitioner must show that his attorney's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A court need not address both components of the *Washington* test if the petitioner makes an insufficient showing on one. *Washington*, 466 U.S. at 697.

A defendant asserting a failure to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Ineffective-assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Claims of uncalled witnesses should be rejected unless the defendant demonstrates prejudice. *Id.* "[T]o demonstrate the requisite *Washington* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *Id.*

Barnes argues specifically that further investigation would have revealed the following: (1) Rodney Brown saw a bloody gun in the possession of Patrick Williams and a bloody purple bandana in the possession of Humphrey on the night of Bass's murder; (2) when Brown asked Humphrey about the purple bandana, Humphrey replied, "I did something"; (3) Humphrey, who appeared to be nervous, sweating, and high on cocaine, sold a gun wrapped in a purple bandana to Harvey Neil, who gave the gun to Marquita Mackey; (4) Humphrey was wearing blue or brown coveralls with blood on them at the time that he sold the gun; (5) Homer Kines told Elizabeth Cruz that he saw Humphrey leave Bass's home on the night of the murder; (6) Robert Brooks and his sister saw a tall male jump the fence near the crime scene, and Brooks told his sister that the male was not Barnes, although Brooks testified at trial that the individual was Barnes; and (7) the lamp on which Barnes's fingerprint was found had been in Bass's home for some time before the murder and Barnes had been around it.

The state trial court determined that the information regarding Humphrey's possession of a gun

and blood-stained clothing was cumulative of trial testimony; that the testimony of Elizabeth Cruz regarding Homer Kine's statements identifying Humphrey would have constituted inadmissible hearsay; that sound strategy existed for not calling Robert Brooks's sister to testify, because Brooks's sister thought that the person hurdling the fence was Barnes; and that the information concerning the lamp was cumulative. The court also noted that Barnes had not attempted to account for the presence of blood consistent with that of the victim on his own coveralls, that Barnes had not alleged that his coveralls had ever been worn by Humphrey, and that the gun that was turned over to authorities by Marquita Mackey was not the one that was introduced at trial and positively identified as belonging to the victim. The court concluded that Barnes had not alleged facts that if true would satisfy either prong of *Washington*. The Court of Criminal Appeals determined that the trial court's findings and conclusions were supported by the record and denied habeas relief on that basis.

The state court's findings are supported by the record. The evidence that Barnes argues would have implicated Humphrey if it had been discovered earlier with further investigation by counsel is cumulative of testimony presented at trial. There was testimony that Humphrey was seen on the day of the murder wearing a pair of blood-stained dark coveralls and in possession of the gun and that he delivered the gun to Williams. Further, Humphrey's statement that he "did something" is not necessarily inconsistent with Barnes's guilt, because there was evidence that Humphrey fenced the gun to Williams.

With regard to Kines's statements to Cruz, Barnes has not provided an affidavit from Kines regarding his alleged identification of Humphrey. Further, with regard to Brooks's allegedly inconsistent statements to his sister and at trial concerning his identification of Barnes, the record shows that, in her affidavit, Brooks's sister stated that she thought the man she and her brother saw jumping Bass's fence was Barnes. Finally, the evidence regarding the fingerprint on the lamp was also cumulative: There was testimony that Barnes had done work for Bass at her home a few weeks before her death.

Given the testimony and the information contained in the affidavits, the state court's findings and conclusions are not an unreasonable application of the law to the facts in determining whether counsel rendered ineffective assistance by failing to investigate and develop facts material to Barnes's innocence. Barnes has therefore failed to make a substantial showing of the denial of a constitutional right with regard to this issue.

The request for a COA is DENIED. *See* § 2253(c)(2).