**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 96-20511

_____

PONCHAI WILKERSON,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-4493)

_____

August 18, 1999

Before WIENER, EMILIO M. GARZA, and PARKER, Circuit Judges.

WIENER, Circuit Judge.[*]

Petitioner-Appellant Ponchai Wilkerson asks us to reverse the district court's denial of his federal petition for habeas corpus, and its refusal to grant a certificate of probable cause (CPC) to appeal that ruling. He also asks us to grant CPC. Concluding that Wilkerson has not met the standard required for the granting of CPC, we deny his request and affirm the rulings of the district court.

I.

FACTS AND PROCEEDINGS

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The facts of the capital murder of which Wilkerson was convicted are set forth in <u>Wilkerson v. State</u>.[1] It suffices for today's purposes that even Wilkerson, who testified on his own behalf, concedes that he fatally shot a jewelry store employee during an armed robbery and that the shooting was neither accidental nor in self-defense. He was tried and convicted in state court by a jury which, in the subsequent punishment phase of the trial, affirmatively answered the questions of deliberateness and future dangerousness pursuant to the Texas special issues.[2] The state trial court sentenced Wilkerson to death. Wilkerson's conviction and sentence were affirmed by the Court of Criminal Appeals of Texas, which subsequently denied rehearing. The United States Supreme Court denied <u>certiorari</u>. After exhausting the state habeas process to no avail, Wilkerson filed this action in the district court seeking federal habeas relief, which that court denied. It also declined to issue a CPC, and the instant appeal followed.

II.

ANALYSIS

A. <u>Standard of Review</u>

---

[1] 881 S.W.2d 321, 324 (Tex. Crim. App.), <u>cert</u>. <u>denied</u>, 513 U.S. 1060 (1994).

[2] Tex. Code Crim. P. Code Ann. § 37.071(b) (West 1981 & Supp. 1999).

Before issuing a CPC in this pre-AEDPA[3] case we must determine whether Wilkerson has made a substantial showing of the denial of a federal right.[4] To do so, Petitioner must "demonstrate that the issues are debatable among jurists of reason; that a court <u>could</u> resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"[5] We apply our well-known standards of review when we examine the district court's denial of habeas relief, i.e., our review of the factual findings of that court is conducted under the clearly erroneous standard, and our review of questions of law, and of mixed questions of fact and law, is plenary. Under 28 U.S.C. § 2254(d), factual findings of the state courts are entitled to a presumption of correctness.

B.   Guilt-Innocence Phase

In applying to us for a CPC, Wilkerson has specified no issues implicating the conduct of the guilt-innocence phase of the state jury trial that produced his conviction for capital murder of the jewelry store employee. Rather, Wilkerson advances six claims of error in the punishment phase of his trial, insisting that as to each he has made a substantial showing of the denial of a federal right, thereby meeting the pre-AEDPA CPC standard stated in

---

[3] Anti-terrorism and Effective Death Penalty Act. of 1996, 28 U.S.C. § 2254 (1994 & Supp 1998).

[4] <u>Barefoot v. Estelle</u>, 463 U.S. 880 (1983).

[5] <u>Id.</u> at 893 n.4 (<u>quoting</u> <u>Gordon v. Willis</u>, 516 F. Supp. 911, 913 (N.D. Ga. 1980)).

3

<u>Barefoot v. Estelle</u>.[6] We turn therefore to the punishment phase of his trial and examine the errors alleged to have been committed there.

C.    <u>Punishment Phase</u>

Wilkerson's trial attorney sought a punishment-phase jury instruction explaining the effects of parole in the context of a Texas life sentence. In Wilkerson's direct appeal, however, his trial counsel did not compound this vain act by asserting trial court error in refusing such an instruction. Nevertheless, at least three of Wilkerson's six claims of constitutional error implicate the question of the effects of parole, including the trial court's refusal to give such an instruction, defense counsel's failure to argue on appeal that such ruling constituted reversible error, and the prosecution's comments about confinement in closing argument.

Regarding the instruction, the State responds, and we agree, that Supreme Court precedent and our own combine to eviscerate Wilkerson's assignments of equal protection, due process, and cruel and unusual punishment errors on no less than three grounds. First, they are procedurally barred given Wilkerson's failure to pursue — exhaust — this matter in his direct appeal and in his habeas applications in the state system.[7] That defense counsel

---

[6]   <u>Id.</u>

[7]   As a matter of law, Wilkerson's claim is exhausted under 28 U.S.C. § 2254 because he cannot now raise it under state law; indeed, were he to try, even after failing in federal habeas, he would be prevented by the Texas version of abuse of the writ.

**4**

might perceive objections or claims of error on appeal to be useless, hollow acts does not excuse the failure to make them so as to preserve the objection and avoid procedural bar. Second, these claims are without substantive merit. Albeit subsequently, the Court in Simmons expressly excepted Texas and its sentencing and parole systems from the requirement to instruct the jury on the effects of parole under a life sentence, and our precedent under Allridge is to the same effect. Prior to Simmons no precedent had required a parole-effects instruction, at least not in Texas. Wilkerson concedes as much and, in admirable candor, also concedes that his efforts in this regard are grounded in the hope, however forlorn, that this panel might write something that would lead to an en banc reconsideration of our Allridge position. We decline this invitation, which brings us to Wilkerson's third strike: Teague v. Lane.[8] Even if we were to disregard both procedural bar and existing precedent, and were to convince this court to revisit the issue en banc and overrule Allridge and its progeny (and thereafter not be reversed by the Supreme Court on the basis of Simmons), the result would constitute a "new rule" under Teague and thus would be unavailable to Wilkerson because of Teague's prohibition against applying new rules retroactively.

This is a double-edged sword, but a proper one: The same analysis thwarts Wilkerson's ineffective assistance of counsel. Wilkerson cannot get past the "cause" prong of the test articulated

---

[8] 489 U.S. 288 (1989).

5

in <u>Strickland v. Washington</u>.[9] Objectively judged, the professional performance of Wilkerson's counsel on direct appeal, in not claiming error in the trial court's refusal to grant the parole instruction, cannot be deemed to have been deficient. Even though, as noted, <u>Simmons</u> and <u>Allridge</u> were not decided until after the professional performance at issue, the fact that the Supreme Court in <u>Simmons</u> expressly excepted Texas from the effect of that judgment supports a determination that counsel cannot be faulted for failing to include the denial of the parole instruction among those issues urged on appeal. Moreover, were we to reach the prejudice prong of the <u>Strickland</u> test, we would almost certainly conclude that the absence of the parole instruction in the punishment phase of Wilkerson's trial was not a "but for" cause of the jury's response to the special issue of future dangerousness. The extensive litany of Wilkerson's violently dangerous behavior eschews any such conclusion.

Albeit legally distinct, Wilkerson's due process claim that the prosecution's assertions in closing argument to the effect that nothing guarantees that Wilkerson will remain in prison is closely analogous to his complaints regarding the absence of the parole instruction and the deficiency of counsel's performance in failing to advance that error on direct appeal. Wilkerson insists that, despite (1) the trial court's instruction to the jury to disregard the prosecution's comment, and (2) the prosecution's explanation to the jury that the comments were made in reference to the

---

[9] 466 U.S. 668 (1984).

possibility of escape, the court's denial of Wilkerson's motion for a mistrial on the basis of the remarks — which, according to Wilkerson, violated Texas jurisprudence that prohibited the prosecution from asking jurors to consider the actual length of the time of incarceration that will result from the sentence they assess[10] — was not grounds for a mistrial under the instant circumstances. In rejecting this contention by Wilkerson, the district court agreed with the observation of the Court of Criminal Appeals of Texas that any error in the prosecution's closing argument was harmless because it is common knowledge that prisoners — even death row prisoners — do escape. Although Wilkerson's habeas counsel now characterizes that holding as "outrageous," in his oral argument to this panel, counsel argued, in discussing this very concept in the context of future dangerousness, that jurors have no concern about future danger to fellow prisoners. This argument is at least as outrageous: The law has long recognized that future danger to inmates, and, even more so, future danger to prison personnel, are valid considerations in the context of the possibility (or absence thereof) of escape, parole, or probation. It suffices that we agree with the analysis of the district court in rejecting this contention.

Wilkerson asserts that the trial court's permitting the prosecution to introduce the testimony of a witness, James McCowan, regarding offenses committed by one Wilton Bethany in the presence

---

[10] See Clark v. State, 643 S.W.2d 723, 724 (Tex. Crim. App. 1982).

of Wilkerson was an erroneous admission of evidence of extraneous offenses by another person.  This is a mischaracterization of the nature and purpose of McCowan's testimony.  Although the testimony of the unlawful acts of Bethany were indeed described by the witness, it was done by way of background and perspective, given that the "extraneous offense" committed by Wilkerson during the same violently unlawful episode — his indiscriminate firing of multiple rounds in the densely-populated urban setting of an occupied apartment complex where the incident occurred — was the point being made by the prosecution in its case for future dangerousness.  Moreover, Wilkerson's failure to object contemporaneously to the admission of McCowan's testimony procedurally bars its consideration now.[11]  And, even if it were not barred, when that testimony is read in its entirety it is easily recognized as evidence of Wilkerson's — not Bethany's — unadjudicated offenses, which is clearly admissible in the punishment phase.[12]

Wilkerson's two remaining claims may escape the label "frivolous," but, at best, are void of both legal and factual merit.  Apart from the likelihood of being procedurally barred, Wilkerson's challenge to (1) the method and extent of the review by the Court of Criminal Appeals of Texas of mitigating evidence presented to the jury regarding future dangerousness, and (2) the

---

[11]  See Wilkerson, 881 S.W.2d at 326-27.

[12]  See, e.g., Duff-Smith v. Collins, 973 F.2d 1175, 1184 (5th Cir. 1992); Milton v. Procunier, 744 F.2d 1091, 1097 (5th Cir. 1984) cert. denied.

sufficiency of the evidence to support the jury's conclusion of future dangerousness, may be acceptable vigorous advocacy in light of the ultimate penalty faced by Wilkerson, but that does not raise these contentions to a level that even approaches a demonstration of a substantial showing of the denial of a federal right. It suffices that our review of the record, the district court's disposition of this case, and the legal arguments of counsel in their respective appellate briefs and oral arguments to this court make clear beyond cavil that, like the other four issues, these two fall short of the <u>Barefoot</u> standard and therefore do not justify the issuance of a CPC.

### III.

### Conclusion

For the reasons set forth above, we decline Wilkerson's request for a CPC and affirm the rulings of the district court. CPC DENIED; Rulings of the District Court AFFIRMED.